**NOT FOR PUBLICATION** **CLOSED**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KRAMER, et al., | : | Civil Action No. 07-0436 (FSH) |
| Plaintiffs, | : | **OPINION** |
| v. | : | |
| | : | June 2, 2009 |
| EXXON MOBIL CORPORATION, et al., | : | |
| Defendants. | : | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon a Motion for Summary Judgment filed by Defendants Exxon Mobil Corporation ("Exxon") and Norman Yang ("Yang") pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 56.1. The Court has considered the parties' submissions pursuant to Federal Rule of Civil Procedure 78.

**I.     Background**

Exxon Mobil was formed in 1999 through the merger of Mobil Chemical Company ("Mobil") and Exxon Corporation. In evaluating its employees, Exxon utilizes a relative ranking system of employees as well as a system of classification levels ("CLs") adapted from those initially instituted by Exxon Corporation prior to the merger. Pursuant to this system, employees

are categorized using salary group ("SG") levels.[1]  Additionally, Exxon annually evaluates its employees through its "Employee Assessment and Development System" ("EADS").[2]

Plaintiffs Anatoly Kramer and Shakeel Tirmizi were both employed by Exxon and stationed in Exxon's facility in Edison, New Jersey.  Kramer was hired by Mobil Chemical Company ("Mobil") in 1996, and commenced employment as a Plant Engineer with Exxon after the 1999 merger.  He has been supervised by Defendant Yang for most of his tenure at Mobil and Exxon.  Kramer has stuttered since early childhood, including at the time he was interviewed by Yang for his initial position and throughout his subsequent employment.

In 2004, Kramer complained to Carol Northington, an Exxon Human Resources Department local representative, that his job title of Plant Engineer and corresponding CL were incorrect.  Northington and Mike Thompson, who was Yang's supervisor and the Synthetics Technology Manager, investigated Kramer's objection, and acknowledged that he, as well as a number of other employees, was given an incorrect title at the time of the merger.  Kramer's title was changed to Research Engineer, but his CL level was not changed.

---

[1] Upon the merger, preexisting Mobil employees were transferred from Mobil's salary group system to Exxon's CLs by adding a certain number of points to their previous SG number. The number of points added was allegedly determined based on that employee's rank position, performance and level of responsibility prior to the merger.

[2] The EADS process begins with an employee filling out a self-critique, which is then provided to that employee's supervisor.  Each supervisor also completes an evaluation form to be used as a discussion aid in the relative ranking process.  All managers in the Technology Department, where Plaintiffs were staffed, meet together, along with human resources representatives, to establish relative rankings.  All technology managers at the Edison facility, not just those who served as direct supervisors, had the opportunity to comment upon each employee's rank.  At all relevant times, Kramer was ranked in the bottom third of employees in the Edison Synthetics Division.  Tirmizi's rank fluctuated between the bottom and middle third. Neither Plaintiff was ever ranked last during the relevant years.

A few months later, Kramer asserted a formal internal complaint against Yang, alleging that Yang had created a hostile work environment for an extended period of time. Exxon initiated a confidential internal investigation, during which all members of Kramer's work group as well as Yang, Thompson and Northington, were interviewed. About this time, allegedly at the advice of counsel, Kramer began secretly recording conversations between himself, Yang, Northington and others. Some of these conversations concerned Kramer's employment reviews. The internal investigators ultimately concluded that although Yang's communication style might be perceived as offensive at times, there was insufficient evidence that he created a hostile work environment or that Exxon's management had failed to take appropriate actions. As a result of the investigation, it was recommended that Yang attend management counseling and training seminars, which he did.

Kramer complained to Northington again in 2005. He believed that Yang did not fairly evaluate him or properly give him credit for his work, in ways that negatively affected his relative employee ranking.[3] In 2006, Kramer was transferred from Yang's group to the New Process Implementation group, where he continues to work under the supervision of Udai Jariwala.

Tirmizi was hired by Mobil as an advanced senior engineer in November 1998. Like Kramer, Tirmizi was supervised by Yang at Mobil and transferred to Exxon after the 1999 merger. In June 2000, Tirmizi took a 12-week leave of absence under the Family Medical Leave

---

[3] Specifically, Kramer complained that Yang incorrectly listed the authors on certain patent applications, and that Kramer should have been listed first on those applications. He also complained that certain employees with lower graduate degrees than his were receiving higher rankings.

Act ("FMLA") purportedly to care for his son, who suffers from autism.[4] He subsequently requested an additional 12 weeks of leave, and his request was granted. Yang personally approved both requests.

Tirmizi was interviewed in connection with Exxon's investigation of Kramer's 2004 complaints. Although Tirmizi attested to his own experiences with Yang, the parties agree that Tirmizi did not say that Yang discriminated against anyone in ways that could violate anti-discrimination laws, such as discrimination based on Kramer's stuttering. In connection with these interviews, and pursuant to Kramer's suggestion, Tirmizi also secretly recorded conversations with Yang, including discussions about his EADS reviews in 2004 and 2005. Tirmizi voluntarily left Exxon in August 2006 and relocated to Denver to work for a start-up alternative fuels company called Range Fuels.[5]

Plaintiffs filed a six-count Complaint on November 8, 2006 in Middlesex County Superior Court, which was removed to this Court on January 26, 2007. Plaintiffs assert federal claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1202, *et seq.*, and the FMLA, 29 U.S.C. § 2601, *et seq*. They also assert state law claims under New Jersey's Law Against Discrimination ("NJLAD") and New Jersey's Family Leave Act ("NJFLA"); common law claims for breach of contract and intentional infliction of emotional distress; and *per quod*

---

[4] Defendants contend that Tirmizi's motives for taking FMLA leave may not actually have been related to his son's condition, but rather to use FMLA leave to further his personal business interests. Plaintiffs do not dispute that Tirmizi traveled to Dubai and India during his FMLA leave in order to attend meetings and trade shows related to such personal business ventures.

[5] The Court notes that Tirmizi is not asserting claims based on a theory of constructive discharge.

4

claims. Discovery in this case has been completed, and the opportunity for further discovery closed in December 2008, pursuant to case management orders issued by Magistrate Judge Shwartz. Defendants now move for summary judgment on all counts.

## II.  **Standard of Review**

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and an issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 322-26; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (2007). All facts and inferences must be construed "in the light most favorable to the non-moving party." *Peters v. Delaware River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

The party seeking summary judgment must initially provide the court with the basis for its motion. *Celotex Corp.*, 477 U.S. at 323. This requires the moving party to either establish that there is no genuine issue of material fact and that the moving party must prevail as a matter of law, or demonstrate that the non-moving party has not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322–23. In connection with this requirement, Local Civil Rule 56.1 requires the moving party to "furnish a statement which sets forth material facts as to which there does not exist a genuine issue ... citing to the affidavits and other documents submitted in support of the motion." Local Civ. R. 56.1. The purpose of

5

such a statement is to narrow the issues raised before the Court and assist in identifying whether material facts are truly in dispute.

Once the party seeking summary judgment has carried this initial burden, the burden shifts to the non-moving party. To avoid summary judgment, the non-moving party must demonstrate facts supporting each element for which it bears the burden, and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Celotex Corp.*, 477 U.S. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must set out specific facts showing a genuine issue for trial using affidavits or as otherwise provided in Fed. R. Civ. P. 56(e) and Local Civ. R. 56.1, which provides that a summary judgment opponent "shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."

### III.    Discussion

#### A.    Plaintiff Kramer's ADA Claims

Plaintiff Kramer alleges that he was harassed because of his stuttering disability and retaliated against for filing an internal complaint, and that such harassment and retaliation constitute violations  in violation of the ADA.[6]  Defendants move for summary judgment on the

---

[6] Plaintiffs' opposition brief states that Tirmizi has not raised an ADA claim, and, therefore the Court analyzes this claim only in relation to Kramer.

ADA claims, on the ground that Kramer failed to exhaust his administrative remedies before seeking judicial relief.

The jurisdictional prerequisites to filing an ADA claim are: (1) filing a charge with the EEOC; and (2) receipt of the EEOC's notice of the right to sue.  42 U.S.C. § 2000e-5(e)(1); *Phillips v. Sheraton Society Hill*, 163 Fed.Appx. 93, 94 (3d Cir. 2005) ("The ADA requires that, prior to bringing a civil action in court, a plaintiff must exhaust his administrative remedies by filing a charge with the EEOC. ... If the charge has not been resolved by the EEOC within 180 days, the agency must issue a right-to-sue letter or the complainant may request a letter.  Because the receipt of a right-to-sue letter indicates that a complainant has exhausted administrative remedies, a complainant may not bring an ADA suit without having first received one.") (internal citations omitted).  *See also Anderson v. DSM N.V.*, 589 F.Supp.2d 528, 535 (D.N.J. 2008) (granting summary judgment on ADA claims because plaintiff failed to exhaust the administrative remedies available).

Kramer has adduced no evidence that he filed an administrative complaint with the EEOC or received a right to sue notice before initiating the instant litigation.  As a result, he has failed to establish an essential prerequisite to bringing an ADA claim.  Rather than presenting evidence that Kramer's administrative remedies were exhausted, Plaintiffs argue only that some courts have held that plaintiffs bringing employment discrimination claims under Title II of the ADA do not have to exhaust administrative remedies before filing a lawsuit in federal court.  *See, e.g., Ferraro v. City of Long Branch*, 314 N.J.Super. 268, 289, 714 A.2d 945, 956 (App.Div. 1998).

This argument is not relevant to the instant action, which is only viable under Title I of the ADA. Title II of the ADA concerns the activities of public entities. *See* 42 U.S.C. § 12132. Defendants here are a private corporation and individual supervisor, and are subject to ADA claims only under Title I of the ADA.[7] Title I, which expressly incorporates the procedures and remedies provided by Title VII of the Civil Rights Act of 1964, includes a requirement that charges of employment discrimination must first be filed with and investigated by the EEOC. *See McSherry v. Department of Labor & Industry*, 2006 WL 463157, *11 (M.D. Pa., February 23, 2006) (discussing the differences between Title I, which expressly incorporates the procedures and remedies provided by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and Title II, which expressly incorporates the procedures and remedies provided by Section 504 of the Rehabilitation Act, 29 U.S.C. § 794a, which do not require that plaintiffs first pursue their claims through the EEOC); *see also Motto v. City of Union City*, 1997 WL 816509 (D.N.J. August 27, 1997).

Because Plaintiff Kramer's ADA claims are only viable under Title I of the ADA, he was required to exhaust administrative remedies prior to filing them with this Court. Because Plaintiff has failed to exhaust such remedies, Defendants are entitled to summary judgment on such claims.[8]

---

[7] The Complaint does not clearly state the statutory basis for the alleged ADA violations, referring to the statute only in summary form at the end of each count.

[8] Defendants have also argued that summary judgment on the ADA claims must be granted because they have no factual basis. Because the Court grants summary judgment on these claims on alternative grounds, Defendants' other arguments need not be reached.

### B.  Plaintiff Tirmizi's FMLA Claims

Plaintiff Tirmizi alleges that he was retaliated against for taking leave in 2000 pursuant to the FMLA.[9] Tirmizi alleges that he received good performance reviews before taking FMLA leave, even though he does not dispute that his relative employment ranking fluctuated between the bottom and middle third at all relevant times. Tirmizi argues, however, that his return from FMLA leave was a turning point after which he started to receive bad performance reviews, and that this change violates the FMLA.[10] Defendants argue that they are entitled to summary judgment on these claims because Tirmizi has adduced no evidence that he suffered an adverse employment action nor evidence that any arguably adverse employment action was causally linked to his FMLA leave, which occurred five and a half years before the Complaint in this action was filed.

To prevail on a claim of discrimination or retaliation based on FMLA leave, a plaintiff must show that: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision,

---

[9] Tirmizi also alleges that he was retaliated against because of his participation in the internal investigation of Kramer's earlier complaints. To the extent such retaliation claims are brought pursuant to the ADA, Defendants are entitled to summary judgment as described above because Plaintiffs have adduced no evidence from which a reasonable juror could conclude that Tirmizi exhausted his administrative remedies. To the extent such retaliation claims are brought pursuant to the NJLAD, the Court declines to assert supplemental jurisdiction, as described below. Kramer is not asserting any claims under the FMLA.

[10] Subsection 825.220(c) of the FMLA regulations provides that "[a]n employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under 'no fault' attendance policies." 29 C.F.R. 825.220.

and (3) the adverse employment decision was causally related to his leave." *Conoshenti v. Public Service Electric & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004); *see also Spagnoli v. Brown & Brown Metro, Inc.*, 2007 WL 2362602, *15 (D.N.J. Aug. 15, 2007).

Defendants gave Tirmizi a three-month FMLA leave from July to October 2000. His FMLA leave was then extended an additional three months at Tirmizi's request and with Yang's approval. Plaintiff is, therefore, able to satisfy the first prong of his FMLA claim. Defendants argue, however, that Plaintiff has failed to produce any evidence from which a reasonable jury could find that he has satisfied either the second or third prongs. This Court agrees.

Tirmizi has adduced no evidence of any adverse employment decision other than allegedly negative performance reviews after his return from leave. Negative performance reviews, however, do not alone support a finding that Tirmizi suffered an "adverse employment action." The term "adverse action" in the context of the FMLA refers to a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Weston v. Commonwealth of Pennsylvania*, 251 F.3d 420 (3d Cir.2001) (citing *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).[11] Plaintiffs have failed to adduce any evidence from which a reasonable jury could conclude that Tirmizi suffered a significant change in his employment status after returning from his FMLA leave in January 2001, or within a reasonable period of time thereafter. Tirmizi's subjective fear of retaliation or feelings of intimidation do not sufficiently support

---

[11] "Courts have operationalized the principle that retaliatory conduct must be serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment into the doctrinal requirement that the alleged retaliation constitute 'adverse employment action.'" *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir.1997).

these claims, nor do negative performance reviews, absent a corresponding actionable adverse employment action that a reasonable jury could find causally related to his FMLA leave in 2000.

Moreover, even if one assumed that Tirmizi could show an adverse employment action, Plaintiffs have not adduced any evidence that establishes a causal connection between Tirmizi's FMLA leave and Yang's allegedly retaliatory conduct towards him.  The Rule 56.1 Statements do not show that Tirmizi had good performance ratings before his FMLA leave and negative ratings afterward, but rather indicate that Tirmizi received mixed reviews throughout his tenure at Exxon.[12]  It is not disputed that Yang's final 2006 evaluation of Tirmizi (before he voluntarily left Exxon) fairly listed his strengths and accomplishments.[13]  Tirmizi himself was not sure that any negative reviews he received were caused by his leave, testifying during his deposition that his theories about Yang's critiques were "pure speculation" or simply suspicions.  Plaintiff does not dispute those characterizations in the Rule 56.1 Statements.

Defendants persuasively point out that there "is simply no temporal connection" between Tirmizi's FMLA leave in 2000 and his eventual departure from Exxon in 2006.  That is clearly so.  Presumably because of the 5-6 year gap between Tirmizi's FMLA leave and his choice to leave Exxon for another job, Plaintiffs appear to base the retaliation claims not on Tirmizi's

---

[12] Tirmizi's reviews before his FMLA leave covered the time period between the Exxon Mobil merger in November 1999 and his departure for FMLA leave in June 2000.  The undisputed Rule 56.1 Statements filed by Defendants show that every review in that period contained both positive and negative remarks, as well as suggestions for performance improvements.  Plaintiffs' Rule 56.1 Statement does not adduce evidence that the reviews after Tirmizi's return from leave were significantly changed from the reviews issued before Tirmizi's FMLA leave.

[13] Tirmizi did dispute this paragraph of Plaintiffs dispute this paragraph of Defendants' statement of undisputed facts, but only commented that it was "editorializing by defense counsel."

departure but on the performance reviews he received, or other negative experiences in the years after his FMLA leave.[14]  However, nothing that happened in the intervening years was an actionable adverse employment action.

With respect to prongs 2 and 3 of the prima facie case for retaliation under the FMLA, Plaintiffs have adduced no evidence from which a reasonable jury could conclude that Tirmizi suffered an adverse employment action that was causally linked to his taking FMLA leave.  Local Civil Rule 56.1 is designed to clearly offer the opposing party the opportunity to contest and refute the facts claimed by the party moving for summary judgment, in a format to permit the Court to readily ascertain if there are genuine issues of fact in dispute.  Because Plaintiffs' initial 56.1 Statement was so deficient in meeting the requirements of this rule, the Court gave them a second chance to get it right.  However, rather than addressing the Defendants' Statement of undisputed facts relating to Tirmizi's FMLA claims, Tirmizi instead offered only a dissociated string of facts, suppositions and conclusions, none of which show a genuine issue of material fact from which a reasonable fact-finder could conclude that Tirmizi suffered an adverse employment action that was causally linked to his FMLA leave 7 years before he filed his Complaint.  As a result, Tirmizi, despite two attempts, has failed to raise more than a metaphysical doubt as to the material facts at issue in connection with his FMLA claim.

---

[14] While blurring the dates of the allegedly adverse actions may have bene done to avoid a statute of limitations problem, any actions recent enough to survive the limitations bar also renders such actions so attenuated from Tirmizi's FMLA leave in 2000 as to be causally unconnected.

**IV.     Conclusion**

For the reasons set forth in this Opinion, the Court grants Defendants' Motions for Summary Judgment as to Plaintiffs' federal claims. To the extent that Plaintiffs' Complaint raises state law claims, the Court declines to assert supplemental jurisdiction over them, pursuant to 28 U.S.C. §1367(c)(3), which provides that the district court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if....the district court has dismissed all claims over which it has original jurisdiction." An appropriate Order will issue.

s/ Faith S. Hochberg
**Hon. Faith S. Hochberg, U.S.D.J.**